**Avram E. Frisch, Esq. (AF-0187)**
**The Law Office of Avram E. Frisch LLC**
4 Forest Avenue – Second Floor
Paramus, NJ 07652
(201) 289-5352
frischa@avifrischlaw.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DARREN COMMANDER : | |
| Plaintiff : | |
| : | |
| V. : | |
| DETECTIVE CRAIG LARGMANN; : | Civil Action No. _____ |
| DETECTIVE TAMI SISK PARSLEY;  JAMIE | |
| SMITH; SCOTT SMITH; JOHN DOES 1-10 | **COMPLAINT AND JURY DEMAND** |
| : | |
| Defendants : | |
| : | |
| **:** | |

The Plaintiff, Darren Commander, an individual, by way of complaint against the above named Defendants says:

## PARTIES

1. Plaintiff, Darren Commander, is an individual who resides in the State of New Jersey, and is the victim of a false arrest and imprisonment scheme perpetrated by the Defendants.

2. Defendant Craig Largmann ("Largmann") is, upon information and belief, a Detective employed by the Bayonne Police Department ("Bayonne PD").

3. Defendant Tami Sisk Parsley ("Parsley" and together with Largmann, the "Detectives")) is, upon information and belief, a Detective employed by the Bayonne PD and a close relative of Jamie and Scott Smith.

1

4. Defendant Jamie Smith ("Jamie") is, upon information and belief, an individual, residing in Bethlehem, Pennsylvania.

5. Defendant Scott Smith ("Scott") is, upon information and belief, an individual residing at 61 Linden Street, Bayonne, New Jersey 07002.

6. Defendants John Does 1-10 refer to unnamed persons who may have participated in the wrongful scheme of the named Defendants, but are not yet known to Plaintiff.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 USCS § 1343. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this district pursuant to the general venue statute, 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PRELIMINARY STATEMENT

8. This action arises from a scheme of Defendants Scott Smith, Jamie Smith, Craig Largemann, and Tami Sisk Parsley to accuse Plaintiff of assaulting Jamie Smith with his vehicle on February 23, 2012.  The Smith brothers claimed that Jamie Smith was hit by a car in the early morning hours of February 23, 2012, and the Detectives participated in a scheme to accuse Plaintiff of a crime and arrested him for various criminal charges related to this incident.  As will be demonstrated below, the Detectives and the Smiths conspired to injure Mr. Commander by falsifying evidence, purposefully using an unreliable lineup and other techniques to ensure that Mr. Commander  was charged with a felony.  Plaintiff believes that

2

the purpose of this plan was to attempt to then obtain a money judgment against him, as they believed him to be a wealthy man.

## FACTS COMMON TO ALL CLAIMS

9. On or about February 23, 2012, Jamie was allegedly hit by a car in Bayonne, New Jersey at or about 61 Linden Street.

10. The incident apparently occurred around 6:00 AM that morning and was initially reported to the police as a cell phone robbery when Jamie and Scott first contacted the police.

11. Despite allegedly being dragged 75 feet and losing his phone, Jamie called 911 approximately 3 minutes after the alleged incident.

12. This call was handled by an individual at the Bayonne Police Department named Anne Marie Smith, who is, upon information and belief, the sister in law of Jamie and Scott, and married to their brother Michael Smith.

13. Jamie claimed to the officer on the scene, as detailed in a police report completed by PO. Martin Gill that he was walking to his brother's vehicle to join him in a carpool to their mutual place of employment.  Jamie claimed that he saw a black car driving and that it suddenly accelerated and purposefully hit him, dragging him 75 feet, knocking his cell phone into the car and causing his pants to tear and his boots to be scraped.  PO Gill's report states that there was an injury to Jamie's knees, but does not detail any such injury.  Furthermore, the report outlines that while paramedics arrived at the scene, all treatment was provided at the scene and that Jamie declined further treatment.  The report finally notes that the driver was driving a late model black Mercedes Benz.

14. In addition, the initial police report includes the missing Iphone's serial and model numbers, both lengthy numbers that most people would not have available shortly after a motor vehicle accident.  Yet, Jamie was prepared with precisely this information when his phone was supposedly "stolen" by a mysterious man who tried to run him over with his new Mercedes for no reason whatsoever.

15. Scott was also reported to have corroborated the facts recited by Jamie to PO Gill and claimed that the black car circled the block a few times before hitting his brother.

16. The ambulance log notes that the ambulance was dispatched at 6:13 AM, reached the patient at 6:15 AM and then returned to its base at 6:31.  The ambulance report also shows that upon their arrival they found Jamie ambulating on scene with negative signs of trauma and negative signs of distress. The chief complaint Jamie had regarding his only injuries were abrasions to both knees with minor bleeding. Which he stated was caused by him being knocked to the ground by a car mirror   despite his later claims that he was dragged 75 feet The ambulance report states the abrasions were cleansed with sterile water and bandaged with 4 X 4 tape and that there were no other deformities or injuries noted throughout his body.

17. The report indicates no trauma, and Jamie signed the release on the report at 6:24 AM.  Jamie refused to go to the hospital (and claimed that he was knocked down by the mirror of a car, without any mention that he was dragged.

18. The motor vehicle accident report states that the car was owned by Darren Commander, was a Mercedes E-350 and recites the license plate of a black

Mercedes, which happens to be owned to by a company in which Mr. Commander is a member. The Accident Report, which does not indicate its completion date, states that Mr. Commander is the owner of the vehicle, which he is not.

19. A supplementary Investigation Report was filed on March 2, 2012 by Largmann included new details alleged by Scott in a conversation with Largmann.

20. Scott stated again that the vehicle suspiciously drove around the neighborhood several times and claimed that it picked up speed when Jamie was crossing the street from his car to join Scott in his car for their drive to work.

21. Largmann filed another report on March 2, 2012 describing his efforts, with Detective Kubert, to locate the driver of the car. They describe a witness who claims to have frequently seen a former boyfriend of a neighbor, Jane Margagliano, driving slowly around the block and peering in Ms. Margagliano's home. He was not a witness to the alleged incident and only provided this information to the detectives upon being informed of the incident.

22. This was how Largmann eventually determined that he believed that Mr. Commander was the driver of the car.

23. At the same time that Largmann was supposedly attempting to locate Mr. Commander, Mr. Commander was contacted by friends of Jane Margagliano and notified that the Bayonne police were investigating this incident. Mr. Commander attempted to contact Detective Largmann, who previously had noted Mr. Commander's phone number, home and work address in his reports, but

Largmann failed to ever return his voicemail or otherwise interview Mr. Commander about the incident.

24. Plaintiff believes this is because Largmann was part of the Smith's conspiracy to frame him for this alleged incident and then to get a civil judgment, as they believed that he was financially well off.

25. Largmann conducted a photo lineup on March 2, 2012 showing Mr. Commander's driver's license photo in an array with the photos of five other individuals. This lineup was rigged to ensure that Mr. Commander would be chosen. At the time of the lineup, Mr. Commander was 45 years old. Significantly older than the mid 30's description given by Jamie and the 40 year old age provided by Scott. Each of the other five participants in the lineup were significantly younger than Mr. Commander.

26. The oldest individual other than Mr. Commander in the lineup was six years younger than Mr. Commander, the youngest in the lineup was 20 years younger than Mr. Commander. The photos were of these individuals appear to have been taken years before at the issuances of their licenses, and thus their appearances were even younger than they would have appeared at the time of the lineup. Each individual used in the lineup lived in Bayonne, in the same neighborhood as the Smiths and Detectives Largmann and (Sisk) Parsley. This lineup was designed so that only Mr. Commander could possibly be chosen.

27. Parsley was to be the blind administrator of the lineup. It is not reported in any of the reports that Parsley is a close relative of the alleged victim, Jamie. Upon

information and belief, Parsley is a close relative, by marriage, of Kim Sisk, Jamie and Scott's sister.

28. On March 6, 2012, Mr. Commander called the Bayonne PD several times and left a voicemail on the message box for Kubert and Largmann saying that he understood that they were seeking to talk to him.  This message was never returned.

29. Instead, on March 7, 2012, Largmann issued complaints against Mr. Commander for Aggravated Assault, Possession of a Weapon for Unlawful Purposes and Theft.

30. On March 18, 2012, Largmann again filed a supplementary investigation report stating that Jamie had contacted him with new information.  The report stated that Jamie investigated Plaintiff through various internet searches and discovered that Mr. Commander owned a company named Metropolitan Architectural Woodwork, LLC at 601 Lehigh Avenue in Union, New Jersey.  Jamie is described as having gone to this address on March 15, 2012 and to have entered its employees only parking lot without authorization to investigate the cars present.

31. He reported to Largmann that he saw a Mercedes in the parking lot that he believed was the one that hit him and he took down its license plate number, E35BSV.  Suddenly he remembered that the car had a radar detector, (allegedly seen while he was getting dragged 75 feet) because the car he found on this lot had a radar detector.

32. Largmann then reported to having run a search through the records of the New Jersey Motor Vehicles Commission ("MVC") to identify this vehicle and that it was leased to Metropolitan Architectural Woodwork, LLC.

33. This car was incorrectly listed by MVC as registered to Metropolitan Architectural Woodwork, LLC, though in error, a company that was already defunct at the time of the incident. Largmann failed to note that the companies at 601 Lehigh Avenue lease several black Mercedes vehicles and there is no way that Jamie would have been able to know that this vehicle was the one that hit him or who the authorized drivers of the vehicle were.

34. At no time prior to issuing the complaint against Mr. Commander did Largmann, or any other individual at the Bayonne PD ever attempt to contact Mr. Commander.

35. At the time that the events described above occurred, Scott's home was in foreclosure in the Superior Court of New Jersey, Docket Number F- 032981-10 and he was in need of money to pay his obligations.

36. Upon information and belief, Jamie claimed that now he had injuries and they had worsened from the alleged incident only after discovering on March 15, 2012 that Mr. Commander owned a large building in Union, New Jersey and was the owner of a construction company.

37. Jamie only first began to seek treatment for his injuries more than 3 weeks after the alleged incident occurred, as disclosed by his medical records turned over to Plaintiff . As shown on by the medical records that was on March 16, 2012 just 1 day after his March 15, 2012 discovery.

38. Shortly after the report filed by Largmann on March 18, 2012, Jamie proceeded to file an insurance claim in this matter.

39. Mr. Commander was placed under arrest on April 17, 2012 after he turned himself in to the Bayonne Police Department. Mr. Commander was held for that entire day until he was released on bail.

40. Criminal charges against Mr. Commander are currently pending and awaiting trial in the New Jersey Superior Court, Hudson County.

## First Count

## Violation of 42 U.S.C. § 1983

41. Plaintiff repeats the allegations of the foregoing paragraphs as if fully set forth herein.

42. Defendants Largmann and Parsley, acting under the color of state law, deprived Plaintiff, with reckless or callous indifference to federally protected rights, including, but not limited to rights secured by the 14th and 4th amendments to the United States Constitution.

43. Defendants Scott and Jamie Smith conspired to use the Bayonne PD and the Detectives to advance their scheme to obtain money from Mr. Commander, and in so doing were acting under the color of state law.

44. Specifically, the Defendants caused Mr. Commander to be arrested, to have his reputation tarnished and to expend large sums of money for attorneys and others to clear his name. This was done in violation of Mr. Commander's rights under the United States Constitution, as the investigation and arrest was without probable cause and deprived him of his liberty without due process of law.

45. The conduct of all of the Defendants proximately caused the Plaintiff's injuries.

## Second Count

## Violation New Jersey Civil Rights Act N.J.S.A. 10:6-1 et seq.

46. Plaintiff repeats the allegations of the foregoing paragraphs as if fully set forth herein.

47. Defendants, acting under color of state law, deprived Plaintiff of due process and other rights, privileges and immunities secured by the Constitution and laws of the United States, and of the laws of the State of New Jersey.

48. These deprivations were the proximate cause of Plaintiff's injuries.

## Third Count

## False Arrest

49. Plaintiff repeats the allegations of the foregoing paragraphs as if fully set forth herein.

50. The Defendants unlawfully caused the arrest of Plaintiff without probable cause or any legal justification.

51. The scheme devised by the Defendants was to obtain money after Plaintiff would be convicted of hitting him with his car.

52. Mr. Commander was thus deprived wrongfully of his freedom by the actions of Defendants.

## Fourth Count

## Civil Conspiracy

53. Plaintiff repeats the allegations of the foregoing paragraphs as if fully set forth herein.

54. The Defendants conspired in a scheme to commit an unlawful act with the purpose of injuring Mr. Commander.

55. The scheme consisted of Jamie Smith and Scott Smith conspiring with certain relatives of theirs who worked at the Bayonne PD to frame an innocent man for hitting Jamie with his car so that they could obtain money from the individual.

56. Mr. Commander was injured by this scheme in that he has been arrested and is now the subject of criminal proceedings.  This scheme has cost Mr. Commander thousands of dollars in legal fees along with damage to his reputation and unnecessary emotional pain and suffering.

## **CLAIM FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that judgment be granted as follows:

a) Awarding Plaintiff compensatory damages in an amount to be determined at trial.

b) Awarding Plaintiffs punitive damages in an amount to be determined at trial;

c) Awarding Plaintiff its costs and disbursements of this suit including reasonable attorney's fees; and

d) Awarding Plaintiff such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiffs hereby demand a jury trial of all issues in this action.

|  |  |
|---|---|
|  | THE LAW OFFICE OF AVRAM E. FRISCH LLC<br>*Attorney for plaintiff*<br><br>BY:_____ |
| Dated: October 18, 2013 | Avram E. Frisch, Esq.<br>4 Forest Avenue, Suite 200<br>Paramus, NJ 07652<br>201-289-5352 |